### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| FRANK VALENZISI | : | CIVIL ACTION NO. |
|    Plaintiff, | : | 3:10-CV-958 (JCH) |
| | : | |
|       v. | : | |
| | : | |
| STAMFORD BOARD OF EDUCATION | : | JUNE 5, 2013 |
|    Defendant. | : | |

**RULING RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 64)**

## I.    INTRODUCTION

Plaintiff Frank Valenzisi ("Valenzisi") brings this action against defendant Stamford Board of Education ("Stamford") for damages resulting from Valenzisi's termination of employment from Stamford High School, where he served as a tenured math teacher.   Valenzisi alleges that his termination was in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("the ADA"), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"), Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq, and the Fourteenth Amendment to the United States Constitution as enforced through Sections 1983 and 1988 of Title 42 of the United States Code.   He also brings a section 1983 and section 1988 claim for violation of the First Amendment to the United States Constitution.

## II.    STATEMENT OF FACTS

At the time of his termination—October 23, 2007—Valenzisi was a tenured teacher under the Teacher Tenure Act, Conn. Gen. Stat. § 10-151, and had been employed by Stamford as a high school math teacher for many years.  Pl. Local Rule ("L.R.") 56(a)(2) St. ¶¶ 3-4.  Valenzisi is a "Born Again, Bible-Believing," Christian who believes God alone counsels him.  Id. at ¶ 37.

1

Prior to his termination, by letter dated August 4, 2006, Valenzisi was advised to contact Deputy Superintendent Carlton Moody ("Moody") to arrange for a "fit for duty" medical evaluation before he could resume his duties at Stamford High School.  Id. at ¶ 5.  Valenzisi had attended a meeting with Moody on June 27, 2006, to respond to claims of sexual harassment and threatening behavior.  Def. Mem. in Supp. Mot. Summ. J., Ex. B.  These incidents included alleged sexually aggressive behavior toward a female colleague, hostile behavior toward a custodian, and difficulty focusing and recognizing people with whom he worked.  Id., Ex. G, 1.  In the letter, Moody detailed how Valenzisi acted bizarrely during the meeting, most notably by reenacting how his female colleague ate a banana in front of him.  Id., Ex. B.  Based on Valenzisi's behavior in the meeting as well as the reported incidents, Moody directed Valenzisi to obtain the medical evaluation from a medical professional selected by the Board of Education.  Id.

On or about August 15, 2006, Valenzisi filed a grievance (a level two request) protesting the directive that he be evaluated to determine his fitness for duty.  Pl. L.R. 56(a)(2) St. ¶ 6.  Valenzisi did not state in the grievance letter that he could not comply with Stamford's request that he obtain a fitness for duty evaluation because of a religious conflict.  Id.  However, according to Valenzisi, he addressed this issue with Deputy Superintendent Moody on an August 29, 2006, telephone call.  Id.  According to Valenzisi, he "pleaded" with Moody "for BOE medical agents to employ industry standard objective testing to determine the fitness IME [independent medical evaluation]

by agency."[1]  Pl. Mem. in Opp. Mot. Summ. J., Ex. 4, ¶ 6.3.

Valenzisi's grievance was denied by letter dated October 18, 2006.  Pl. L.R. 56(a)(2) St. ¶ 7.  On or about October 20, 2006, Valenzisi appealed the denial by filing a level three grievance presentation.  Id. at ¶ 8.  He did not include any information regarding his inability to comply with Stamford's request that he obtain a fitness for duty evaluation because of religious conflict.  Id.

By letter dated December 22, 2006, Moody directed Valenzisi to obtain an evaluation for fitness for duty and to schedule an appointment for an evaluation by January 16, 2007.  Id. at ¶ 10.  Moody informed Valenzisi that his refusal to obtain an evaluation would "constitute insubordination and may result in disciplinary action including dismissal."  Id.

Valenzisi went to the office of Dr. Morris Bell ("Dr. Bell") for an evaluation on January 12, 2007.  Id. at ¶ 11.  According to Stamford, Valenzisi was not required to participate in secular counseling before being seen by Dr. Bell for the fitness for duty evaluation.  Def. L.R. 56(a)(1) St. ¶ 12.  According to Valenzisi, he was referred to the Employee Assistance Program ("EAP") to schedule his evaluation with Dr. Bell. Because EAP offers mental health and substance abuse therapy, not medical evaluations, he was required to seek secular counseling.  Pl. L.R. 56(a)(2) St. ¶ 12. However, Valenzisi agrees that he was sent to Dr. Bell for an evaluation, not counseling.  Id. at ¶ 13.  Dr. Bell prepared a report of his evaluation, dated January 17,

_____

[1] Valenzisi also stated in response to Stamford's interrogatories that he emailed his CEA Representative Sue Fullerton to say that, "secular counseling, as a means for procuring an IME by agency, was forbidden to Plaintiff as per his religious beliefs, while implying that he would have no objection to industry standard objective clinical testing or Christian counseling to achieve the same purpose."  Pl. Mem. in Opp. Mot. Summ. J., Ex. 4, ¶ 6.2.  However, Valenzisi has not included those emails in the record.

2007.  Id. at ¶ 14.  Dr. Bell states in the report that Valenzisi walked out before the

evaluation was complete.  Id.  Dr. Bell notes that Valenzisi came back a few moments

later and Dr. Bell informed him that they could meet again to complete the evaluation.

The two agreed to meet the next Monday, but Valenzisi canceled the appointment.  Bell

stated in the report that he was not able to speak further with Valenzisi.[2]  Id.  In the

report, Dr. Bell also recommended that Valenzisi have a comprehensive neurological

assessment.  Id. at p. 4, ¶ 2.

After receiving Dr. Bell's report, Moody sent Valenzisi a letter, dated February 16,

2007, requesting that he attend a pre-termination hearing.  Id. at ¶ 15.  The pre-

termination hearing was being held as a result of Valenzisi's refusal to submit to testing

as requested.  Id.  Also in February, Valenzisi asked his Union to submit his grievance,

which had previously been denied, to arbitration.  Id. at ¶ 16.  In his request dated

February 5, 2007, Valenzisi summarized what had transpired since his suspension in

June 2006; however, he never mentioned that he had a religious conflict that required

an accommodation.  Id.  After the pre-termination hearing, Moody sent a letter, dated

March 15, 2007, to Valenzisi.  The letter notified him that Stamford was considering

whether to terminate his contract of employment and informed Valenzisi that he could

request a statement of reasons and a hearing concerning the action.  Id. at ¶ 17.

Attorney Thomas Mooney sent a letter, dated March 28, 2007, to Valenzisi's

Connecticut Education Association[3] ("CEA") attorney Christopher Hankins, which stated

---

[2] Valenzisi attempts to deny this statement, in part, because Dr. Bell wrote his final report within five days of the first meeting, allowing no time to reschedule the follow-up visit.  Pl. L.R. 56(a)(2) St. ¶ 14. Valenzisi is attempting to argue his case rather than admit or deny facts.

[3] CEA is Valenzisi's union.  See Pl. L.R. 56(a)(2) St. ¶ 30.

the reasons why Valenzisi's contract of employment was under consideration for termination.  Id. at ¶ 18.

The termination hearings were held before an Impartial Hearing Panel.  Id. at ¶ 19.  Valenzisi participated in the hearings and was represented by a CEA attorney.  Id. at ¶ 20.  At no time during those hearings was anything said about a religious conflict or a request for an accommodation for what Valenzisi believed was a religious conflict.[4] Id. at ¶ 21.  Valenzisi did not ask for an accommodation related to his religious beliefs nor did he inform the panel that he was opposed to secular counseling.[5]  Id. at ¶ 22.  At the conclusion of the termination hearings, Valenzisi's attorney prepared proposed Findings of Fact and Conclusions of Law on Valenzisi's behalf.  Id. at ¶ 24.  Those proposed findings and conclusions never mentioned a religious conflict or request for an accommodation.  Id.  On October 3-4, 2007, the panel signed their "Findings and Recommendation," in which they recommended that Valenzisi's employment be terminated.  Id. at ¶ 19.  Valenzisi agrees that the Findings and Recommendation were substantively supported by Dr. Bell's report.  Id. at ¶ 27.

On October 23, 2007, Stamford met to consider the panel's Findings and Recommendation.  Id. at ¶ 25.  At that time, Valenzisi presented Stamford with a report from a doctor he had seen on his own.  Id.  Neither Valenzisi's CEA attorney nor

---

[4] Valenzisi denies this assertion, in part, by again citing his deposition testimony in which he states that, "[t]he issue of the accommodation was raised by –me at level two and level three."  Pl. L.R. 56(a)(2) St. ¶ 21.  However, in his deposition, Valenzisi differentiates between the hearing and "level two and level three" of the grievance process.  Valenzisi Dep. at 24, 18-19.  He admits that he did not raise the issue of a religious conflict at his termination proceeding.  Id. at 24, 18.  Therefore, the court deems this statement admitted.

[5] Again, Valenzisi denies, in part, this statement by arguing his case, rather than admitting or denying facts.  Valenzisi tries to qualify the statement by explaining that, "he learned 'that grievance you can only. . . cite the collective bargaining agreement or a violation thereof."  Pl. L.R. 56(a)(2) St. ¶ 22.  Regardless of his reason for not raising his need for a religious accommodation, the fact remains that he admits that he did not make such a request.  Therefore, the court considers the statement admitted.

Stamford moved to re-open the termination hearings to consider the new report.  Id. According to Valenzisi, the report concluded that he was not mentally ill.  Id. at p. 5, ¶ 10.

At the meeting, Stamford accepted the Findings and Recommendation of the panel and terminated Valenzisi's contract of employment.  Id. at ¶ 26.  Valenzisi did not appeal Stamford's decision to terminate his employment and retired within days of being terminated.  Id. at ¶¶ 28, 47.

Valenzisi claims that the CEA refused to represent him on appeal, which is why he forfeited the right to timely file a Superior Court Complaint of Appeal.  Id. at ¶ 29. Valenzisi believes that the CEA failed to follow his instructions, negligently omitted evidence, miscommunicated with him, caused his absence at the first of three hearings regarding his termination, and failed to correct misrepresentations before the panel considering his termination.  Id. at ¶¶ 30-31.  Valenzisi claims he raised his alleged religious conflict with his CEA representative, but admits that he has no evidence that these concerns were presented to the defendant.  Id. at ¶ 32.

 Valenzisi claims that "he filed an August 13, 2008 letter addressed to a Ms. Giantonio with the Equal Employment Opportunity Commission ("EEOC").  Id. at ¶ 38. This was his first filing with the EEOC.  Id.  That letter lists Valenzisi as the "Claimant," and Stamford as the "entity against whom the charge is set forth."  Id. at ¶ 39.  The only facts set forth in this letter were that Valenzisi's "employment contract was terminated on October 22, 2007, due to religious discriminatory practices, following 35 years of distinguished Service."  Id.  The letter is not signed by the plaintiff under oath.  Id.

Valenzisi has no receipt to show if and when the August 13, 2008 letter was received by the EEOC.  Id. at ¶ 41.

On January 9, 2009, Valenzisi signed a statement under oath regarding his alleged religious discrimination claim.  Id. at ¶ 42.  There are no facts set out in this statement regarding any alleged disability discrimination claim.  Id. at ¶ 43.  A Notice of Charge of Discrimination is dated for January 15, 2009.  Def. Mem. In Supp. Mot. Summ. J., Ex. O.  That Charge includes claims for religious and disability discrimination. Id.  Stamford received the Charge, which is date stamped January 22, 2009.  Pl. L.R. 56(a)(2) St. ¶ 44.  The EEOC mailed a "Dismissal and Notice of Rights" of Valenzisi's Charge on March 23, 2010, which indicated that, "the EEOC is unable to conclude that the information obtained establishes violations of the statutes."  Id. at ¶ 45.  The Notice informed Valenzisi that he could file suit within 90 days of receipt of the Notice.  Def. Mem. in Supp. Mot. Summ. J., Ex. Q.  Valenzisi did so.

## III.    STANDARD OF REVIEW

A motion for summary judgment "may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law."  In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009).  Thus, the role of a district court in considering such a motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists."  Id.  In making this determination, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought.  See Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment." United Transp. Union v. Nat'l R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir. 2009). Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir.2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)); see also Havey v. Homebound Mortg., Inc., 547 F.3d 158, 163 (2d Cir. 2008) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)) (stating that a non-moving party must point to more than a mere "scintilla" of evidence in order to defeat a motion for summary judgment).

IV.   **DISCUSSION**

A. EEOC Complaint

As a preliminary matter, Stamford argues that summary judgment should enter in its favor because Valenzisi failed to file a timely Complaint with the EEOC. Def. Mem. in Supp. Mot. Summ. J. at 8. "Title VII requires that an employment discrimination claimant pursue administrative procedures before commencing a lawsuit and imposes a deadline for the initiation of such procedures." Fitzgerald v. Henderson, 251 F.3d 345, 358-59 (2d Cir. 2001). "A person alleging employment discrimination under Title VII . . . is obligated to file a charge of discrimination with the EEOC within 300 days after the alleged discriminatory act took place" when the state in which the violation occurred

"maintains an administrative agency to receive and adjudicate claims of unlawful discrimination."  Simpson v. City of New York Dept. of Hous. Preservation and Dev., 2009 WL 996388, at *5 (S.D.N.Y. Apr. 13, 2009).  Both parties agree that Valenzisi was subject to the 300 day timeframe.  The debate is as to when Valenzisi filed his EEOC charge.

Valenzisi argues that his initial August 13, 2008 letter, addressed to a Ms. Giantonio, constituted his EEOC charge. Def. Mem. in Supp. Mot. Summ. J., Ex.O. According to Valenzisi, his later "Notice of Charge," dated January 15, 2009, was an Amended Complaint. Id., Ex. P.  Stamford argues that the "non-verified letter to the EEOC on August 13, 2008" cannot constitute the charge because Valenzisi "has been unable to produce any proof that the EEOC received that letter during that time frame" and because "the letter sets out absolutely no facts to support a claim of religious discrimination and does not even mention disability discrimination."  Def. Mem. in Supp. Mot. Summ. J. at 9.  According to Stamford, the January 15, 2009 charge was filed more than 300 days from the date Valenzisi was terminated; therefore, it was untimely.

In Federal Express Corp. v. Holowecki,[6] 128 S. Ct. 1147 (2008), the Supreme Court considered what could constitute an EEOC charge under the ADEA.  The plaintiff in Holowecki had filed an intake questionnaire and affidavit instead of a notice of charge.  Id. at 566.  The Supreme Court held that the questionnaire and affidavit were sufficient to constitute a charge, largely relying on the EEOC's interpretation of its

---

[6] The court is aware that the Holowecki court considered what constituted a charge under the ADEA and not Title VII.  However, the regulations pertaining to Title VII charges are similar to those pertaining to ADEA charges.  The EEOC states in the regulations pertaining to Title VII charges that, "[n]otwithstanding the provisions of paragraph (a) of this section, a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of."  29 C.F.R. § 1601.12.

regulations." Id. at 1154-55.  The Supreme Court held that a charge is sufficient if it (1) "meets the requirements of [section] 1626.6—i.e., if it is 'in writing and . . . names[s] the prospective respondent and . . . generally allege[s] the discriminatory act[s]" and (2) if the filing, taken as a whole, should be construed as a request by the employee for the agency to take whatever action is necessary to vindicate her rights." Id.  The Supreme Court noted that, "under this permissive standard a wide range of documents might be classified as charges [,] [b]ut this result is consistent with the design and purpose of the ADEA," which, "like Title VII, sets up a 'remedial scheme in which laypersons, rather than lawyers are expected to initiate the process.'" Id. at 1158.

The letter Valenzisi sent to the EEOC meets these minimal requirements.  The letter sets forth Valenzisi's name (and contact information) as well as that of his employer's and explains that, on October 22, 2007, he was terminated after working for 35 years because of religious discriminatory practices.  Def. Mem. in Supp. Mot. Summ. J., Ex. P.  Stamford complains that this statement is not detailed enough, but the EEOC regulations state that the charge is not required to include a statement of the facts.  See 29 C.F.R. § 1626.8(a) (stating that the charge "should" contain a "clear and concise statement of the facts"); Holowecki v. Federal Express Corp., 440 F.3d 558, 566 (2d Cir. 2006) (stating that, according to the regulations, "a charge 'should contain,' but is not required to contain" the information reflected in section 1626.8).[7]

_____

[7] Furthermore, "a later-verified charge may relate back to an otherwise timely filing that includes those elements, but lacks the more formal attributes of a charge."  Jallow v. Office of Court Admin., 2012 WL 4044894, at * 6 (S.D.N.Y. Sept. 4, 2012).  Valenzisi's "Notice of Charge," Def. Mem. in Supp. Mot. Summ. J., Ex. P., includes a detailed discussion of the facts.

In addition, the letter clearly indicates Valenzisi's intent to activate the administrative investigator process. Valenzisi states, "I wish to file a charge against the parties named above." Id. Further, he thanks Ms. Giantonio for explaining the procedure for filing a charge and sets forth information in the letter that appears to respond to the information she told him was necessary to file a charge. Id. Based on the Supreme Court's decision in Holowecki and its directive that "[d]ocuments filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies," Holowecki, 128 S. Ct. at 1160, the court concludes that, at the summary judgment stage, there are sufficient facts to allow a reasonable jury to determine that Valenzisi filed a timely charge with the EEOC.[8]

B. Religious Discrimination

Valenzisi claims that Stamford discriminated against him based on his Christian faith when it required him to see a secular counselor to determine whether he was fit to return to work. Valenzisi brings his claims for religious discrimination pursuant to Title VII and Sections 1983 and 1988. Am. Compl. (Doc. No. 50) ¶¶ 10, 12.

1. Title VII

"Under Title VII, an employer cannot discriminate against any employee on the basis of the employee's religious beliefs unless the employer shows that he cannot

---

[8] Stamford argues that Valenzisi has not introduced evidence that the EEOC received the 2008 letter. Def. Mem. in Supp. Mot. Summ. J. at 9, n.2. However, that is a question of fact for the jury to decide. See Int'l Healthcare Exchange, Inc. v. Global Healthcare Exchange, LLC, 470 F.Supp.2d 345, 354 (S.D.N.Y. 2007) (stating that, "[b]ecause the form that Cuene claims to have sent to the EEOC appears to include the basic information called for by the regulation, her allegation that she faxed the form in a timely manner [even though there is no record or receipt by the EEOC] raises a genuine issue of material fact that cannot be resolved upon this motion for summary judgment").

'reasonably accommodate' the employee's religious needs without 'undue hardship on the conduct of the employer's business.'" Philbrook v. Ansonia Bd. of Educ., 757 F.2d 476, 481 (2d Cir. 1985) (citing 42 U.S.C. § 2000e(j)).  A plaintiff bringing a claim for religious discrimination must first make out a prima facie case: "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; (3) he or she was disciplined for failure to comply with the conflicting employment requirement." Id. (citing Turpen v. Missouri-Kansas-Texas R.R., 736 F.2d 1022, 1026 (5th Cir. 1984)).

It is debatable whether Valenzisi has introduced evidence which would allow a reasonable jury to determine that he has a bona fide religious belief that conflicts with an employment requirement.  Valenzisi has certainly introduced evidence that he is a born-again Christian who does not believe in "secular counseling."  Pl. L.R. 56(a)(2) St. ¶ 37.  However, the parties contest whether the employment requirement at issue in this case—that Valenzisi obtain a fitness for duty evaluation—involves secular counseling. According to Valenzisi, he was directed to contact EAP to schedule his evaluation. Because EAP offers mental health and substance abuse therapy, not medical evaluations, Pl. L.R. 56(a)(2) St. ¶ 12, Valenzisi argues that the fit for duty evaluation is a form of therapy, i.e. counseling.  Valenzisi further argues in his Memorandum in Opposition that the evaluation he received from Dr. Bell was secular counseling.  Pl. Mem. in Opp. Mot. Summ. J. at 10.  However, he also admitted in his deposition that he was sent to Dr. Bell for an evaluation, not for counseling, Valenzisi Dep. 81, 13-17, suggesting that he agrees that (1) there is a distinction between an evaluation and a

counseling session; and (2) Stamford did not send him to Dr. Bell to receive secular counseling (even if that is what he believes he ultimately received from Dr. Bell).

However, even were the court to determine that a reasonable jury could find that Valenzisi had a bona fide religious belief that conflicted with an employment requirement, Valenzisi's claim fails on the second prong of his prima facie case.  There is no evidence before the court to support Valenzisi's claim that he requested an accommodation from Stamford.  Although Valenzisi contradicts himself in his deposition, the record reflects that throughout the grievance process—in his level two and level three grievances—Valenzisis never informed Stamford that he needed an accommodation to see a Christian counselor for an evaluation.  Valenzisi Dep. at 80, 4-9.

In its Local Rule 56(a)(1) statement, Stamford states that, "[t]he plaintiff did not bring up any issue regarding his religious freedom or alleged disability during the grievance process."  Def. L.R. 56(a)(1) St. ¶ 9.  Valenzisi denies this assertion, citing to his deposition in which he states that he raised the issue of a religious accommodation at level two and level three of the grievance process.  Valenzisi Dep. at 24, 14-22.  At the same time, however, Valenzisi admits that he did not raise the issue of a religious accommodation at the level three stage.  See Pl. L.R. 56(a)(2) St. ¶ 8.  Further, at later points in his deposition, he stated that he did not bring up "issues of [his] religious freedom or disability . . . during the grievance [process]."  Valenzisi Dep. at 80, 4-9.

Although Valenzisi's statements during his deposition are contradictory, the documentary evidence supports Valenzisi's admission that he did not raise his need for a religious accommodation during the grievance process.  In Valenzisi's Level Two

Formal Grievance Presentation—which includes a detailed "Statement of Grievance"—

Valenzisi never mentions that he could not obtain a "fit for duty" evaluation due to his

religious beliefs.  Def. Mem. in Supp. Mot. Summ. J., Ex. C.  Instead, he argues that

there was no just cause to suspend him and that any medical evaluator selected by

Stamford "may have been or will become biased as a result of Dr. Moody

communicating or the evaluator's reading the August 4th letter," which described

Valenzisi's recent behavior.  Id. at 2.  In the section of the level two grievance letter for

"action requested," Valenzisi requests "immediate and unconditional repeal of Dr.

Moody's August 4th mandate requiring district side 'medical evaluation and a fit for duty

determination,'" but never mentions his religious conflict.  Id. at 3.

        In Valenzisi's Level Three Formal Grievance Presentation, he again sets out his

"statement of grievance" and "actions requested," and fails to include any request for a

religious accommodation.  Pl. Mem. in Opp. Mot. Summ. J., Ex. 3.  Although he stated

in his EEOC Charge that at the level three hearing, he "protested BOE indoctrination as

a pretext for issuing a fitness for duty determination . . . [and] appealed for BOE

members to either withdraw its directive or employ standard medical professional

testing to determine his fitness for duty," this request does not in any way articulate a

need for a religious accommodation.  Def. Mem. in Opp. Mot. Summ. J., Ex. P.  Further,

in response to Stamford's interrogatory asking Valenzisi to "set out each and every time

the plaintiff allegedly requested that the defendant provide him with an accommodation

based on his religious beliefs," Valenzisi never mentioned seeking an accommodation in

either the level two or level three proceedings.  Pl. Mem. in Opp. Mot. Summ. J., Ex. 4,

Question 6.  Therefore, the court does not find support in the record to allow a

reasonable jury to find that Valenzisi requested an accommodation during the grievance process.

Valenzisi says he contacted his union representative, Sue Fullerton, on August 18, 2006, and October 31, 2006, saying that "secular counseling, as a means for procuring an IME by agency, was forbidden." Pl. Mem. in Opp. Mot. Summ. J., Ex. 4, ¶ 6.2. However, Valenzisi has not included those emails in the record and, more importantly, he has not introduced any evidence that Fullerton passed that information along to Stamford. He says that he "pleaded" with Deputy Superintendent Moody to "employ industry standard objective testing, to determine the fitness IME by agency." Id. ¶ 6.3. However, the court does not know what "industry standard objective testing" is, nor is there any reason to believe that Stamford construed such a plea to be a request for a religious accommodation. Valenzisi claims that Moody was "well aware" of his "religious convictions and position regarding secular counseling." Pl. Mem. in Opp. Mot. Summ. J. at 10. However, his only evidence of Moody's awareness is the fact that, in a letter directing Valenzisi to obtain a medical evaluation, Moody stated that Valenzisi justified his allegedly sexual behavior toward another teacher by citing his "'Christian life' as . . . [the] source of support for . . . [his] lack of companionship." Def. Mem. in Supp. Mot. Summ. J., Ex. B. The statement merely describes what Valenzisi said in the meeting and does not indicate that Moody was aware of Valenzisi's refusal to submit to secular counseling based on religion.

Because Valenzisi has failed to introduce evidence to establish a prima facie

case of religious discrimination based on Stamford's failure to accommodate[9] his need

for Christian counseling, Stamford's Motion for Summary Judgment as to Valenzisi's

Title VII claim for religious discrimination is granted.

### 2. Section 1983

"Employment discrimination actions brought as equal protection claims under 42

U.S.C. § 1983 are subject to the same evaluation as Title VII claims," Sharif v. Buck,

152 Fed. Appx. 43, 44 (D. Conn. 2005), although when a plaintiff brings a claim via

section 1983 against "a school district or other municipal entity . . . [the plaintiff] must

show that the [violation] was the result of municipal custom, policy, or practice."

Kantrowitz v. Uniondale Union Free School Dist., 822 F.Supp.2d 196, 216 (E.D.N.Y.

2011). Because the court granted Stamford's Motion for Summary Judgment as to

Valenzisi's Title VII claims for religious discrimination, the court similarly grants

Stamford's Motion as to Valenzisi's equal protection claim based on religious

discrimination.

─────────────────────

[9] Valenzisi sets forth the requirements of a prima facie case as stated in Philbrook for claims of religious discrimination based on a failure to accommodate. Pl. Mem. in Opp. Mot. Summ. J. at 8. However, at later points in his Memorandum, Valenzisi appears to argue that he was terminated because of his religious beliefs (as opposed to his failure to obtain a medical evaluation). Id. at 9 ("The plaintiff was disciplined and terminated for no legitimate reason giving rise to the inference that the adverse actions of being placed on administrative leave and subsequently being terminated were a result of discrimination."). To state a prima facie case under this latter theory, Valenzisi must show that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he experienced an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. Campbell v. Windham Comm. Mem. Hosp., 389 F.Supp.2d 370, 377 (D. Conn. 2005) (citing Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000).

Valenzisi has failed to introduce evidence to meet the fourth prong. There is no evidence to suggest that Stamford placed Valenzisi on administrative leave, required him to obtain an evaluation, or terminated him because of his religious beliefs. The only evidence Valenzisi points to is Moody's statement in his letter regarding Valenzisi's "Christian life," see supra, p. 15. In that letter, Moody stated that, during a meeting regarding allegations that Valenzisi behaved inappropriately toward a female colleague, Valenzisi justified his allegedly sexual behavior by citing his "'Christian life' as . . . [the] source of support for . . . [his] lack of companionship." Def. Mem. in Supp. Mot. Summ. J., Ex. B. The statement merely describes what Valenzisi said in the meeting. It does not support a finding that Moody terminated Valenzisi because of his religious beliefs.

C.  Disability Discrimination

1.  ADA and Rehabilitation Act

Valenzisi claims that Stamford discriminated against him, in violation of both the

ADA and the Rehabilitation Act, because of a perceived disability, namely a neuro-

psychological disability described by Dr. Bell.  Pl. Mem. in Opp. Mot. Summ. J. at 12.

As a preliminary matter, Stamford appears to argue that Valenzisi cannot bring a

claim for disability discrimination because the August 13, 2008 letter—which Valenzisi

argues constitutes his EEOC charge—did not mention a claim for disability

discrimination.  Def. Mem. in Supp. Mot. Summ. J. at 9, n.2.  It is only the later, 2009

"Notice of Charge," that includes Valenzisi's claim for discrimination based on disability.

Def. Mem. in Supp. Mot. Summ. J., Ex. P.

"In the Second Circuit, the clear rule is that '[a] district court only has jurisdiction

to hear Title VII claims that either are included in an EEOC charge or are based on

conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in

the EEOC charge.'"  Cameron v. Saint Francis Hosp. and Medical Center, 56 F.Supp.2d

235, 239 (1999) (citing Wilson v. Fairchild Republic Co., 143 F.3d 733, 739 (2d Cir.

1998)).  "The Second Circuit has recognized three kinds of situations where claims not

alleged in an EEOC charge are sufficiently related to the allegations in the charge that it

would be unfair to civil rights plaintiffs to bar such claims in a civil action.  The first type

of 'reasonably related' claim encompasses claims not raised in the charge where the

conduct complained of would fall within the 'scope of the EEOC investigation which can

reasonably be expected to grow out of the charge of discrimination.'"  Id.  Valenzisi's

claim for disability discrimination is reasonably related to his claim for religious

discrimination such that it "relates back" to the initial 2008 filing under this first type of situation.

"[G]enerally, amendments that raise a new legal theory do not 'relate back' to an original charge of discrimination." Caravantes v. 53rd Street Partners, LLC, 2012 WL 96474, at * (S.D.N.Y. Jan. 12, 2012) (citing Manning v. Chevron Chemical Co., 332 F.3d 874, 878 (5th Cir. 2003)).  However, when an additional claim "could reasonably be expected to grow out of an EEOC investigation," courts have found that the amended complaint properly "amplified" the original complaint.  Bowen v. MTA New York City Transit Auth., 2011 WL 7940367, at *8 (E.D.N.Y. Dec. 29, 2011); see also Manning v. Chevron Chemical Co., 332 F.3d 874, 879 (5th Cir. 2003) ("We have held that an amendment, even one that alleges a new theory of recovery, can relate back to the date of the original charge when the facts supporting both the amendment and the original charge are essentially the same.").  Although, admittedly, Valenzisi's original 2008 letter does not include facts which could form the basis of a claim for disability discrimination—because the letter only included a generalized statement—it is certainly reasonable that an investigation into Stamford's demand that Valenzisi obtain a medical evaluation could reasonably be expected to lead to a claim for disability discrimination. For this reason, the court will reach the merits of Valenzisi's claim for disability discrimination.[10]  See Drummer v. DCI Contracting Corp., 772 F. Supp. 821, 826 (S.D.N.Y. 1991) (recognizing that, following Sanchez v. Standard Brands, Inc., 431 F.2d

---

[10] Courts have recognized that an important purpose of the "relate back" rule is to "put employers on notice of 'the existence and nature of the charges against them.'"  Manning, 332 F.3d at 878.  Here, there is no concern that Stamford did not have notice of the claim for disability discrimination—along with the claim for religious discrimination—because the EEOC notified Stamford of Valenzisi's suit after the filing of the "Notice of Charge" in 2009 (not after Valenzisi filed his 2008 letter).  Therefore, Stamford was always on notice about both legal theories.

455 (5th Cir. 1970), "it has been held that '[t]he failure to attach a legal conclusion . . . to the factual occurrences complained of has been interpreted to be a 'technical defect' within the meaning of the" EEOC regulations).

"Claims alleging disability discrimination in violation of the ADA [and the Rehabilitation Act][11] are subject to the burden-shifting analysis originally established by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." <u>McBride v. BIC Consumer Products Mfg. Co., Inc.</u>, 583 F.3d 92, 96 (2d Cir.2009). Under such a burden-shifting analysis, "[a] plaintiff must establish a <u>prima facie</u> case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." <u>Sista v. CDC Ixis North America, Inc.</u>, 445 F.3d 161, 169 (2d Cir.2006). To make out a <u>prima facie</u> case of discrimination based on perceived disability, Valenzisi must show: (1) Stamford is covered by the ADA, (2) Valenzisi suffers from or is regarded as suffering from a disability within the meaning of the ADA, (3) he was qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability or perceived disability. <u>Capobianco v. City of New York</u>, 422 F.3d 47, 56 (2d Cir. 2005).

_____

[11] "The standards for determining whether an employer has discriminated under the Rehabilitation Act are the same as those under the Americans with Disabilities Act," <u>Maglietti v. Nicholson</u>, 517 F.Supp.2d 624, 630 (D. Conn. 2007), absent a few differences. Both claims are subject to the <u>McDonnell Douglas</u> burden-shifting analysis, <u>see id.</u>, but "ADA plaintiffs must present evidence that the 'animus against the protected group was a significant factor in the position taken by the municipal decision makers" whereas "under the Rehabilitation Act, by contrast, the plaintiff must show that the defendants . . . [took an adverse employment action] 'solely' because of the disability." <u>Kennedy v. Fitzgerald</u>, 2002 WL 1796816, at * 2 (N.D.N.Y. July 23, 2002) (citing <u>LeBlanc-Sternberg v. Fletcher</u>, 67 F.3d 412, 425 (2d Cir. 1995) and <u>Flight v. Gloecker</u>, 68 F.3d 61, 64 (2d Cir. 1995)).

Stamford argues (1) that Valenzisi has not introduced evidence to allow a reasonable jury to determine that Stamford perceived him to have a disability; and (2) there is no evidence that Valenzisi was terminated <u>because of</u> any perceived disability. Def. Mem. in Supp. Mot. Summ. J. at 12-13.  According to Stamford, Valenzisi was terminated for failing to be fully evaluated to determine whether he was fit to return to his duties as a teacher.  <u>Id.</u> at 13.

   1.  Regarded as suffering from a disability

Because Valenzisi was terminated in 2007, before the passage of the ADA Amendments Acts of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553 (2008), the court must apply the pre-ADAAA standard for a "regarded as" disability claim.  <u>See Laurent v. G&G Bus Service, Inc.</u>, 2011 WL 2683201, at * 5-6 (S.D.N.Y. 2011). "Accordingly, with respect to any claim of disability prior to January 1, 2009, where the claim is one of being perceived as disabled, plaintiff must show that the employer regards the plaintiff as disabled <u>within the meaning of the ADA,</u> and not merely that plaintiff is regarded as having some measure of a disability or impairment."  <u>Id.</u> (citing <u>Brtalik v. S. Huntington Union Free Sch. Dist.,</u> 2010 U.S. Dist. LEXIS 107373, at *24 (E.D.N.Y. Oct. 6, 2010)).  "In other words, a plaintiff stating this sort of claim must show that the employer regarded [him or] her as having 'a physical or mental impairment that substantially limited one or more [of the plaintiff's] major life activities.'"  <u>Id.</u> (citing 42 § U.S.C. 12102(2) (2006)).

According to Stamford, there is no evidence that Stamford perceived Valenzisi as having an impairment that limited a major life activity.  Def. Mem. in Supp. Mot. Summ. J. at 12.  Stamford argues that, because Dr. Bell never completed his evaluation, "there

was never any finding of a particular condition from which the plaintiff was suffering and, as such, there could be no perception that he suffered from a disability within the meaning of the ADA." Id. at 13. The court disagrees with Stamford's argument that it could not have perceived Valenzi to have a disability because Dr. Bell was unable to conclusively diagnose Valenzisi. The Impartial Hearing Panel's findings and recommendations evidence that Stamford relied on Dr. Bell's admittedly preliminary findings that Valenzisi suffered from serious memory loss and dementia. Def. Mem. in Supp. Mot. Summ. J., Ex. L, 14. Therefore, the record illustrates that Stamford perceived Valenzisi to suffer from a physical or mental impairment, i.e. dementia and memory loss. However, under the pre-ADAAA standard, such evidence is not enough. Stamford must have perceived Valenzisi to suffer from an impairment that limited a major life activity. Therefore, the question becomes whether Stamford believed that Valenzisi's dementia and serious memory loss limited a major life activity. The court concludes that Valenzisi has introduced evidence to suggest that Stamford perceived him as suffering from an impairment that limited a major life activity.

In its findings and recommendation, the Impartial Hearing Panel stated it was concerned about Valenzisi's belligerence, poor judgment, failure to stay focused, and memory loss. Id. at 13-14. To the extent that these symptoms substantially interfered with Valenzisi's ability to work as a teacher, the court notes that, "[b]eing declared unsuitable for . . . [a] particular position  . . . is not a substantial limitation of a major life activity." Daley v. Koch, 892 F.2d 212, 215 (2d Cir. 1989) (stating that "'poor judgment, irresponsible behavior and poor impulse control' do not amount to a mental condition that Congress intended to be considered an impairment which substantially limits a

21

major life activity").  "'Substantially limit[ed]' in the ability to work means that a plaintiff is 'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs.'"  Ryan v. Grae & Rybicki, PC, 135 F.3d 867, 872 (2d Cir. 1998) (citing 29 C.F.R. § 1630.2(j)(3)(i)); see also Villanti v. Cold Spring Harbor Cent. School Dist., 733 F.Supp.2d 371, 381 (E.D.N.Y. 2010) (stating that, even if the plaintiff had testified that she is unable to perform her current job . . . she has not offered any testimony indicating that she could not perform another comparable job in her field") (emphasis added).

Stamford showed concern that Valenzisi could not work well with others in the workplace.  Def. Mem. in Supp. Mot. Summ. J., Ex. L, 14 ("There is no reasonable chance that Mr. Valenzisi can conform behavior to the reasonable dictates of the workplace.  His method of turning his own problems around and blaming others indicates his thought process cannot accept that he himself is to blame for the reaction of others to his behavior.").  On one hand, such concerns are similar to the "poor judgment and irresponsible behavior deemed not to be an impairment in Daley.  However, "major life activities" are defined as "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working."  29 C.F.R. § 1630.29(h)(2)(i).  Based on Stamford's concerns about Valenzisi's dementia and memory loss, a reasonable jury could find that Stamford perceived Valenzisi to be substantially limited in the major life activities of concentrating, thinking, communicating, and interacting with others.

2.   Suffered adverse employment action because of perceived disability

Stamford argues that Valenzisi was terminated for failing to be fully evaluated to determine whether he was fit to return to his duties as a teacher, not because of a perceived disability.  Def. Mem. in Supp. Mot. Summ. J. at 13.  However, the Impartial Hearing Panel cited two reasons for recommending Valenzisi's termination: (1) for being insubordinate by failing to complete a medical evaluation with a Board-approved medical professional; and (2) for having what preliminary tests and anecdotal evidence suggest to be dementia and memory loss, making it impossible for Valenzisi to conform his behavior to the reasonable dictates of the workplace.  See Def. Mem. in Supp. Mot. Summ. J., Ex. L, 12-13.  Stamford accepted the Findings and Recommendation of the panel and terminated Valenzisi's contract of employment. Pl. L.R. 56(a)(2) St. ¶ 26.

Under the ADA, a plaintiff must present evidence that animus was a "significant factor" in the adverse action, whereas "[t]o establish a prima facie case of discrimination under the Rehabilitation Act, by contrast, the plaintiff[] must show that the defendant[] . . . [acted] 'solely' because of the disability."  Regional Economic Comm. Action Program, Inc. v. City of Middletown, 294 F.3d 35, 49 (2d Cir. 2002).  Because the Impartial Hearing Panel and Stamford had two reasons for terminating Valenzisi, it would appear that Valenzisi can meet this third prong of the prima facie case under the ADA, but not the Rehabilitation Act: there is certainly evidence that Valenzisi's perceived mental deficits were a significant factor in the panel and Stamford's decision to terminate Valenzisi, but it was not the "sole" reason because Stamford also considered Valenzisi's failure to submit to a complete evaluation by Dr. Bell.  However, in arguing a Rehabilitation Act claim, "[a] plaintiff is entitled to challenge as pretextual an

assertion that the employer is not relying on the employee's handicap."  Teahan v. Metro-North Commuter R. Co., 951 F.2d 51, 516 (2d Cir 1991).  Valenzisi introduced evidence before the Impartial Hearing Panel that he contacted Dr. Bell to try and reschedule the evaluation and testified that he told Superintendent Moody about his attempt to reschedule.  Def. Mem. in Supp. Mot. Summ. J., Ex. L, 11.  The panel did not find Valenzisi's testimony credible and instead credited Moody's testimony that Valenzisi never mentioned his attempts to reschedule.  Id. at 12.  However, just because the panel did not find Valenzisi's testimony credible does not mean that no reasonable jury could.  To the extent that such testimony is credible, a reasonable jury could determine that the panel's disregard for Valenzisi's excuse was an attempt to find a reason to terminate him.  Furthermore, the panel stated at the conclusion of its recommendation that, "[f]or the safety of Mr. Valenzisi and the Stamford High School Community, we recommend that Mr. Valenzisi's employment be terminated."  Id. at 14. Such a recommendation could be the basis for a jury to infer that the real reason the panel chose to terminate Valenzisi's employment was because of the panel's perception that his mental decline prevented him from working as a teacher.  Therefore, there are issues of material fact which preclude a finding that disability was not a "significant factor" (for the ADA) or "sole" reason (for the Rehabilitation Act) for terminating Valenzisi.

   3.  Qualified to perform the essential functions of the job

      Although Stamford does not argue as to this prong of the prima facie case, the court will consider whether a reasonable jury could find that Valenzisi was qualified to perform the essential functions of his job.  There is overwhelming evidence of

24

Valenzisi's difficulties at work: angry outbursts, inappropriate interactions with colleagues, difficulty focusing and following conversations.  Based on the descriptions of his behavior by colleagues and Dr. Bell's report, it was reasonable for the Impartial Hearing Panel to determine that there was no reasonable chance Mr. Valenzisi could conform his behavior to the workplace and perform the essential functions of being a teacher.  Def. Mem. in Supp. Mot. Summ. J., Ex. L, 12-13.  However, Valenzisi introduced evidence that he was qualified to perform the essential functions of his job.  According to the medical reports he provided to Stamford on the day he was terminated, there was "no compelling evidence of organic deficit, incipient cognitive decline, or other cognitive disorder or gross memory impairment."  Pl. Mem. in Opp. Mot. Summ. J., Ex. 8, at 6.  According to this report by Dwain Fehon, Psy.D., his "cognitive strengths fall within the areas of verbal comprehension, working memory, and abstract spatial reasoning skills."  Id.  The report also noted that his less developed areas were still within the average range of functioning.  Id.  Such evidence contradicts Stamford's determination that Valenzisi was not qualified to perform the essential functions of his job.

The court notes that in other circuits, courts have suggested that the relevant question is not whether the defendant's decision regarding the defendant's qualifications "was correct by 'objective standards.'"  Pesterfield v. Tennessee Valley Authority, 941 F.2d 437, 443 (6th Cir. 1991).  Instead, what is relevant is whether the defendant "acted on its good faith belief about plaintiff's condition based on" the doctor's opinion available to it.  Id. (stating that "the district court found that TVA's medical staff reasonably relied upon the medical report of plaintiff's private psychiatrist and

reasonably interpreted its contents" and that the plaintiff "failed to prove that TVA's decision to terminate him was based upon a stereotyped attitude toward persons with psychological handicaps rather than upon a reasoned and medically supported judgment that plaintiff could not be returned to work safely under any accommodation that TVA could make"); see also Smith v. Chrysler Corp., 155 F.3d 799 (6th Cir. 1998) (applying Pesterfield in the ADA context and stating that "the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action").  Here, the Impartial Hearing Panel reasonably relied on Dr. Bell's report to determine that Valenzisi suffered from dementia and serious memory loss, which impeded his ability to fulfill the requirements of his teaching position.  See Pl. L.R. 56(a)(2) St. ¶ 27 (admitting that "[t]he plaintiff agrees that the October 4, 2007 Panel Findings and Recommendation was substantively supported by Dr. Morris Bell's January 17, 2007 medical report").  Based on the Sixth Circuit's "good faith belief" analysis, had Stamford only had the benefit of Bell's report when making its decision to terminate Valenzisi, Stamford would not be liable under the ADA or Rehabilitation Act because it was reasonable to infer that Valenzisi was not qualified to perform his job.

However, Valenzisi has introduced evidence, unlike the plaintiff in Pesterfield, that Stamford was aware of conflicting medical evidence at the time it made its termination decision.  Valenzisi has introduced evidence that, on October 23, 2007—the day he was terminated by Stamford—he presented Stamford with a medical report from his private physician in which his physician stated that there was "no compelling evidence of organic deficit, incipient cognitive decline, or other cognitive disorder or gross memory impairment."  Pl. Mem. in Opp. Mot. Summ. J., Ex. 8, at 6.  Valenzisi

stated in response to defendant's interrogatories that he hand delivered this report to

the superintendent and Board of Education president.  Pl. Mem. in Opp. Mot. Summ. J.,

Ex. 4, Question 11.  Although Stamford states that Valenzisi's union representative did

not move to reopen the termination hearings for the consideration of the doctor's report,

neither did Stamford.  Def. L.R. 56(a)(1) St. ¶ 25.  Regardless, the report was before

Stamford at the time it made its decision regarding Valenzisi's ability to serve as a

teacher.  See Holiday v. City of Chattanooga, 206 F.3d 637, 646 (6th Cir. 2000)

(overturning grant of summary judgment because the defendant had evidence before it

at the time of plaintiff's termination that flatly contradicted the physician's medical

conclusions).  Therefore, it is a question for the jury whether—based on the reports by

both Dr. Bell and Dr. Fehon—Valenzisi was qualified to perform the essential functions

of his job.

    4.  Legitimate non-discriminatory reason for the discharge and pretext

      Having set out a prima facie case, the burden shifts to Stamford to introduce

evidence of a legitimate non-discriminatory reason for the discharge.  Sista, 445 F.3d at

169.  Stamford has introduced evidence that it fired Valenzisi, first and foremost, for

being insubordinate by failing to complete a medical evaluation with a Board-approved

medical professional.  Def. Mem. in Supp. Mot. Summ. J., Ex. L, 12 ("The

Superintendent established by credible evidence that Mr. Valenzisi was insubordinate");

see also Ex. H (letter from Superintendent Moody to Valenzisi stating that a "meeting is

being held as the result of your refusal to submit to testing as directed.  This type of

conduct on your behalf is serious and may lead to discipline up to termination of

employment.").

The burden now shifts to Valenzisi to show that the proffered reason is a pretext. Sista, 445 F.3d at 169.  As discussed when analyzing the third prong of Valenzisi's prima facie case under the Rehabilitation Act, see supra, pp. 23-24, Valenzisi introduced evidence before the Impartial Hearing Panel that he contacted Dr. Bell to try and reschedule the evaluation and testified that he told Superintendent Moody about his attempt to reschedule.  Def. Mem. in Supp. Mot. Summ. J., Ex. L, 11.  Because a jury could find that the panel disregarded Valenzisi's attempts to reschedule the meeting so as to find a reason to terminate him unrelated to his perceived mental impairments, there remain issues of material fact which preclude summary judgment.  Therefore, Stamford's Motion for Summary Judgment as to Valenzisi's claim for disability discrimination is denied.[12]

2.  Section 1983

Stamford argues that, because Valenzisi was "a public school employee, he does not have a cognizable claim under the Equal Protection Clause of the Fourteenth Amendment for his alleged perceived disability."  Def. Mem. in Supp. Mot. Summ. J. at 14.  "Disability and/or perceived disability are not suspect or quasi-suspect classifications."  Kaiser v. Highland Central School Dist., (N.D.N.Y. dec. 8, 2008) (citing Board of Trustees of University of Alabama v. Garrett, 531 U.S. 356 (2001)).

---

[12] The court notes briefly that Stamford tries to argue that Valenzisi cannot challenge his termination because he failed to exhaust his remedies under the Teacher Tenure Act.  Def. Mem. in Supp. Mot. Summ. J. at 16; see also Conn. Gen. Stat. 10-151(e) (giving aggrieved teacher 30 days to appeal).  In the only case the court could find addressing such an argument, the Western District of Michigan held that, because "Title VII requires an aggrieved party to file, within 180 days of the alleged discriminatory practice, a charge with the EEOC and receive a 'right to sue' letter before bringing an action against 'the respondent named in charge,'" and the Teacher Tenure Act required the plaintiff to file suit within 20 days, "the Plaintiff did not have a full and fair opportunity to litigate the disability discrimination claim before" the administrative body and the claim was not precluded.  Sullivan v. River Valley Sch. Dist., 20 F.Supp.2d 1120, 1124 (W.D. Mich. 1998).

"Therefore, a plaintiff asserting an Equal Protection claim under 42 U.S.C. § 1983 based on disability discrimination is asserting a "class of one" Equal Protection claim, to which the courts apply rational basis analysis."  Id.  "Because the Supreme Court held that the Equal Protection Clause does not apply to claims brought by public employees under the 'class of one' theory, Stamdord's Motion for Summary Judgment is granted as to Valenzisi's section 1983 claim for disability discrimination.  See Enquist v. Oregon Dept. of Agr., 553 U.S. 591, 605 (2008).

    D.  First Amendment Violation

      Valenzisi argues that Stamford's policy, requiring employees to submit to a medical evaluation, discriminates against religious Christians who do not believe in secular counseling, in violation of Valenzisi's First Amendment rights to free exercise of religion.  Am. Compl. ¶ 8 (referring to Proposed Am. Compl. (Doc. No. 40-1) ¶ 63).  "In order to prevail on a Free Exercise Clause claim, a plaintiff generally must establish that 'the object of [the challenged] law is to infringe upon or restrict practices because of their religious motivation,' or that its 'purpose . . . is the suppression of religion or religious conduct.'"  Okwedy v. Molinari, 69 Fed. Appx. 482, 484 (2d Cir. 2003) (citing Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 533 (1993)).  "It is not a violation of the Free Exercise Clause to enforce a generally applicable rule, policy or statute that burdens a religious practice as long as the government can 'demonstrate a rational basis for [the] enforcement' of the rule, policy or statute, and the burden is only an incidental effect, rather than the object, of the law."  Id.

      The policy at issue in this case states that, "The Superintendent may require any school employee to have a health examination by the employee's choice of one from a

panel of three specialists, designated by the school medical advisor in accordance with law. . . The specialist shall advise the Superintendent of the employee's fitness to carry on his/her assignment."  Pl. Mem. in Opp., Mot. Summ. J., Ex. 7.  Stamford failed to abide by this policy when it required Valenzisi to obtain a medical evaluation through EAP instead of allowing Valenzisi to select from a panel of three specialists.  Pl. L.R. 56(a)(2) St. ¶ 12.  However, there is no evidence before the court that the purpose of the policy, as written or as applied, was to infringe upon Valenzisi's—or any employee's—religion.  Therefore, Stamford's Motion for Summary Judgment as to Valenzisi's claim pursuant to the First Amendment is granted.

## V.    CONCLUSION

For the foregoing reasons, Stamford's Motion for Summary Judgment as to Valenzisi's claims pursuant to Title VII and section 1983 (under the Equal Protection Clause and the First Amendment) is GRANTED.  Stamford's Motion for Summary Judgment as to Valenzisi's claims pursuant to the ADA and the Rehabilitation Act are DENIED.

**SO ORDERED**.

Dated at New Haven, Connecticut, this 5th day of June, 2013.

_____/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge